# In the United States Court of Federal Claims

No. 19-339C
Filed: May 19, 2022

**CULLY CORPORATION,**

            *Plaintiff,*

v.

**THE UNITED STATES,**

            *Defendant.*

## ORDER AMENDING SUMMARY JUDGMENT

**TAPP, Judge.**

      On April 14, 2022, the Court denied summary judgment for both parties and made substantive findings about the property interest at issue, but it ultimately found that factual issues remained for trial. *Cully Corp. v. United States,* \_\_\_ Fed. Cl. \_\_\_ 2022 WL 1115107 (April 14, 2022) (*Cully* Sum. J. Op., ECF No. 122). That Opinion was issued after several years of litigation including amended pleadings, dispositive motions, exhaustive discovery, pretrial filings, and a working trial schedule; all providing a seemingly stable landscape only weeks before trial scheduled in Fairbanks, Alaska. At the summit of trial preparation, the United States substantially altered its legal position. This pivot is the catalyst for the Court's determination that a portion of the Summary Judgment Opinion must be amended.

      This takings case has been litigated for three years and has been the subject of three substantive opinions, thus an in-depth factual recitation is unnecessary. (*See* ECF Nos. 36, 59, 122). In its April 14 Summary Judgment Opinion, the Court determined that Plaintiff, Cully Corporation ("Cully"), holds a valid reversionary interest in the properties at issue and that the United States' letter[1] of March 16, 2013 challenging Cully's ownership interest was "baseless." (*Cully* Sum. J. Op. at 17). However, the Court also found genuine issues of material fact necessitating trial. These issues included whether the United States' actions qualified as an interference necessary to prove a taking and whether Cully had incurred damages from the taking of its reversionary interest or could incur damages from the United States' continued interference. (*Id.*).[2] The parties and the Court marched toward the May 9 trial date.

---

[1] This has also been referred to as the "ouster letter."

[2] Also remaining for trial was a second claim asserting quantum meruit. The Summary Judgment Opinion made no substantive findings regarding that claim. Those findings, or lack thereof, remain undisturbed by this Order.

On April 27, 2022, at 10:34 p.m. ET, the eve of the Final Pretrial Conference, the United States filed the following notice:

> Defendant . . . respectfully notifies the Court that on April 27, 2022, the United States Air Force sent a letter to the President of Cully Corporation (Cully), Ms. Martha Awalin, rescinding the March 6, 2013 letter from Air Force Colonel Robyn Burk to Ms. Awalin (that, in turn, rescinded the March 27, 2006 Letter of Transfer). A copy of the April 27, 2022 letter was also sent on the same day to plaintiff's counsel and is attached as an exhibit to this Notice. Because the March 6, 2013 letter serves as the basis of Cully's Fifth Amending [*sic*] takings claim against the United States, *see* ECF No. 42 ¶ 34 (2nd Amended Complaint), and consistent with this Court's recent decision on the matter, *see* ECF No. 122, the rescission of the March 6, 2013 letter moots plaintiff's takings claim.

(Recission Notice, ECF No. 137).[3] The referenced letter is signed by Colonel Paul S. Cornwell, Commander of Pacific Air Forces Regional Support Center. (2022 Recission Letter, ECF No. 137-1). That letter states:

> In the 6 March 2013 letter from Colonel Robyn M. Burk, Commander, 611th Air Support Group to Martha Awalin, President/CEO, Cully Corporation, concerning facilities 2, 3, and 4 at Point Lay Long Range Radar Site, the Air Force determined that the 27 March 2006 Letter of Transfer was not authorized and not effective. That 6 March 2013 determination is hereby rescinded, and the letter of 6 March 2013 is hereby withdrawn. A copy of the 6 March 2013 letter, as well as the 27 March 2006 Letter of Transfer, are enclosed.

(*Id.*). This recission recognizes the validity of the 2006 Letter of Transfer, a dramatic and unilateral shift in the government's legal position. The United States asserts this change was spurred by the Court's Summary Judgment Opinion issued almost two weeks earlier. During the Final Pretrial Conference, after some discussion about the effects of this double recission, the Court afforded Cully additional time to review the letter and form a position on its practical effects.

---

[3] The Court notes the drastic change in the United States' legal positions throughout the course of this litigation, as they seem to be based on convenience rather than its actual stance. The uncertainty it has caused has wasted a great deal of time and that has not gone unnoticed. For example, many months after insisting that Cully acknowledge the United States' authority for the purported taking, the resulting opinion, and Second Amended Complaint, the United States now "rescinds" the 2013 "ouster" letter and concedes it has no interest whatsoever in the property. Any legitimate purpose underlying the United States' maneuverings, when weighed against the resulting delay and costs, are difficult to discern.

On May 5, 2022, the Court held a Status Conference to discuss the United States' Recission Notice and establish its effect on trial scheduled to begin four days later. During that Conference, the United States explained the purpose of the newest recission:

> [T]he sole purpose of issuing that letter is that in the Court's opinion on page 17, the April 14th opinion, the Court posed the question whether the United States plans to continue with the ouster should the buildings revert to Cully. So in other words—and elsewhere in the opinion the Court refers to a future taking. The purpose was to reassure the Court and the parties as to any prospective—in other words, it's our understanding that when the lease expires, those buildings, via letter of transfer, will revert to Cully. And the 2022 letter from Colonel Cornwell offers that reassurance.

(Transcript of May 5, 2022 Status Conference ("*Cully* 5/5/22 Tr.") at 21:19–22:6, ECF No. 147). Given this assurance and the dramatically altered position, the Court is faced with little choice but to amend its Summary Judgment Opinion to conform to existing facts.

There has been no final judgment in this case, nor does this order constitute a final judgment. Under RCFC 54(b), the Court may reconsider its interlocutory decisions at any time before judgment "as justice requires." *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 536 (2021). RCFC 54(b) states that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment . . .." RCFC 54(b). "Orderly and efficient case administration suggests that questions once decided not be subject to continued argument but the court has the power to reconsider its decisions until a judgment is entered." *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991). As long as a decision is interlocutory, the Court possesses wide discretion to depart from or stand by it depending on what justice requires. *E&I Glob. Energy Servs.*, 152 Fed. Cl. at 533. Thus, because the Court's Summary Judgment Opinion is interlocutory, the Court may exercise wide discretion in reconsidering its prior rulings, particularly when there has been a change in a party's position. *See Lodge Constr., Inc. v. United States*, __ Fed. Cl. __, 2022 WL 1113279 at *7 n.8 (Fed. Cl. Apr. 14, 2022) ("[The Plaintiff's] motion to reconsider, unlike the overwhelming majority of such motions, is proper because an important intervening fact occurred[.]"). The Court may exercise this discretion upon motion or sua sponte.[4] *See*

---

[4] The Court may also exercise discretionary review for any other reason that justifies relief pursuant to RCFC 60(b)(6). Rule 60(b) specifies that a grant of relief must be "[o]n motion," but does not indicate whether this motion must be a party's or may be made by the Court, sua sponte. There is some question as to whether the law of this circuit allows for sua sponte relief under this rule. *See Mission Critical Sols. v. United States*, 104 Fed. Cl. 18, 23 n.4 (2012) (citing *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1359 n.1 (Fed. Cir. 2006) (noting that, although it was proper for the district court to amend its findings upon a timely filed motion under Rule 52(b), "the district court on its own motion could have granted relief from judgment under Rule 60(b)(6)" and citing favorably cases from other circuits that hold that a court may grant 60(b) relief sua sponte); *Young v. United States,* 60 Fed. Cl. 418, 427 (2004) (noting the circuit split on the question of whether a court may order 60(b) relief sua sponte and holding that

*Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 699 (Fed. Cir. 2001) (affirming trial court's authority to act sua sponte under Fed. R. Civ. P. 54(b)).

In this case, the Summary Judgment Opinion does not constitute a final judgment and this Order does not change that. Instead, alteration is strictly based on representations and filings made by the United States. Amending the Summary Judgment Opinion to conform to the United States' recent position would not extend litigation but would instead narrow the scope of triable issues. Therefore, the Court holds that sua sponte amendment is warranted in that it would both justify the newly taken position *and* expedite litigation. It is against this backdrop that the Court considers the legal foundation of this case.

Given the facts surrounding litigation, the Court, and understandably Cully, expressed concern as to whether the 2022 Recission Letter would be the subject of a *third* recission down the road. The United States attempted to assuage those concerns, reiterating that the "intent of that letter, of the 2022 letter offers that assurance as to the Air Force's intent[.] When that lease expires, the Air Force is not going to stop those buildings reverting to Cully. That's the intent." (*Cully* 5/5/22 Tr. at 24:3–7). The Court has no reason to believe the United States will stray from its recorded word. Considering these assurances, the Court finds that a permanent taking has not occurred. As the United States correctly points out, there can be no case in controversy over an uncertain "future taking." *See Nw. LA Fish & Game Pres. Comm'n v. United States*, 446 F.3d 1285, 1291 (Fed. Cir. 2006) (holding that a possible future taking of property cannot give rise to a present action for damages). Any interference in the future would be a claim separate and apart from this one. But this finding does not end the Court's analysis.

"To rise to the level of a taking, . . . interference [with plaintiff's property rights] must be 'so complete as to deprive the owner of all or most of his interest in the subject matter.'" *Nat'l Food & Beverage Co., Inc. v. United States*, 105 Fed. Cl. 679, 695 (2012) (quoting *R.J. Widen Co. v. United States*, 357 F.2d 988, 993 (Ct. Cl. 1966)). This is true even when the taking has been short or temporary in nature. Although there has been some confusion over the use of the terms "temporary" and "permanent" in the takings context, courts recognize both types of physical takings.

The United States mischaracterizes the implications of a reversionary interest. Though it is correct that a possible future taking of property cannot give rise to a present action for damages, that edict is inapplicable. Here, the claimed harm is not a *possible* future taking but instead a *certain* past taking. The 2022 Recission Letter does not "moot" Cully's taking claim; it merely limits it to that of a temporary, past taking. This distinction necessitates amendment of the Court's previous findings. The question has become whether the Court can determine from the record before it whether a temporary taking occurred. It can.

The United States explains that its position is that "any taking of Cully's reversionary interest can only happen in the future and has not happened, and it's not [ripe]." (*Cully* 5/5/22 Tr. at 22:21–24). That assertion—that a taking of a reversionary interest could not happen until the

---

it was appropriate to vacate a judgment under Rule 60(b) sua sponte)). Because sua sponte amendment is clearly contemplated under RCFC 54(b), the Court will not analyze whether sua sponte amendment is also allowed under other provisions.

future—is incorrect. Though reversions are generally regarded as future interests, they vest existing, nonpossessory estates. Restatement (First) of Property § 153 (1936) (quoting *Squantum Gardens, Inc. v. Assessors of Quincy*, 140 N.E.2d 482, 488).[5] That does not mean that a reversionary interest can only be taken in a future sense. A material interference with the existing estate also constitutes a taking. As the Federal Circuit has noted, "a taking occurs when the owner *is deprived of use* of the property," even if the government later abandons its permanent taking—i.e., abandons the ultimate act of physical ouster from the property after the reversionary right has vested. *Ladd v. United States,* 630 F.3d 1015, 1025 (Fed. Cir. 2010) (citing *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004).

Here, the United States, after having admittedly transferred a valid, reversionary interest to Cully, substantially interfered with those accompanying rights. On March 6, 2013, Air Force Colonel Robyn Burk sent Cully a letter that stated, in relevant part:

> The Air Force remains the owner of all lands and buildings at Point Lay LRRS and the North Slope Borough has a leasehold interest in facilities 2, 3 and 4. A Letter of Transfer dated 27 March 2006 and signed by the 611th Air Support Group Commander purported to transfer facilities 2, 3 and 4 to Cully Corporation. That letter cites an authority for transfer of government property to public bodies. As an Alaska for-profit corporation, Cully Corporation is not a public body. The Air Force has therefore determined that the Letter of Transfer was not authorized and is not effective.

(*Cully* Sum. J. Op. at 6 (citing Def.'s Mot. A40, ECF No. 83)).

It is not a physical ouster that led to the taking. Though a possessory estate had not yet vested, the March 6, 2013 assertion, despite the Air Force's belief at the time, acted to cloud and forestall Cully's interest. That cloud acted as a complete deprivation of Cully's interest in the buildings. Because the cloud has since lifted, the taking is temporary. "[F]or all that the [g]overnment takes it must pay." *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, No. 17-9001L, 2022 WL 1284465, at *14 (Fed. Cl. Apr. 29, 2022) (quoting *United States v. Dickinson*, 331 U.S. 745, 750 (1947)).

Physical takings are compensable, even when temporary. *Ladd*, 630 F.3d at 1025 (citing *Hendler v. United States*, 952 F.2d 1364, 1376 (Fed. Cir. 1991)). The duration of a physical taking pertains not only to the issue of whether a taking has occurred, but also to the determination of just compensation. *Otay Mesa Prop., L.P. v. United States*, 670 F.3d 1358, 1364 (Fed. Cir. 2012). A temporary taking of a reversionary interest, though attenuated, has the potential to cast a long shadow. As the United States conceded at the May 5, 2022 Status Conference, without government interference, Cully could have sold its interest at any point between the Letter of Transfer in 2006 and the 2022 Recission Letter. When asked if Cully could have sold its reversionary interest, the United States asserted that, "[o]ne of the indices of possession or ownership of an interest, yeah, I . . . think they could." (*Cully* 5/5/2022 Tr. at 30:6–

---

[5] Beyond the determination that a reversionary interest exists, the specifics of Cully's interest and its rights and obligations arising therefrom are not within the jurisdiction of this Court.

8). Further, in many instances, a party or corporation may borrow against a reversionary interest and record that interest as a corporate asset in its financial statements. When the United States told Cully it had no interest in the properties because they were not effectively transferred, it foreclosed Cully from pursuing those avenues.

Once a taking has been classified as either temporary or permanent, the Court applies the appropriate method of determining just compensation. *Otay Mesa*, 670 F.3d at 1364. For instance, the usual measure of just compensation for a temporary taking is the "fair rental value of the property for the period of the taking." *Id.* (citing *Kimball Laundry Co. v. United States,* 338 U.S. at 1, 7 ("[T]he proper measure of compensation [in a temporary takings case] is the rental that probably could have been obtained . . . .")). However, when considering a reversionary interest, that method is inapplicable. The Federal Circuit has held that traditional compensation methods are not exclusive; for example, there may be appropriate alternative valuation methods for the taking of an easement. *See Vaizburd v. United States*, 384 F.3d 1278, 1285–87 (Fed. Cir. 2004). It remains to be seen what actual damages Cully can prove, if any, as a result of the temporary taking, but the Court will not foreclose that proof at this juncture.

Although the Court has referred to the 2013 Letter as an "ouster letter" and used that ouster as a benchmark for timeline purposes, the temporary taking stems from encumbering Cully's interests, not the physical ouster. The United States outwardly told Cully that the transfer was not valid and that Cully had no interest in the buildings. This constitutes a complete deprivation of Cully's rights to the property—Cully was foreclosed from selling the buildings, from claiming them as assets, from borrowing against its reversionary interests, etc. Though the Air Force had no authority to do so, physical expulsion from the building is not compensable since Cully only possessed a reversionary interest. The only outstanding issue as to this temporary taking is what damages, if any, Cully can prove regarding the United States' interference with the use of Cully's reversionary interest.

Its practical effect is slight, but amendment to the Court's Summary Judgment Opinion is justified.[6] The purpose of this Order is to conform the Court's ruling to the facts before it and to narrow issues for trial. This Order is not an indication that the United States' change in position means that Cully's reversionary interest is transformed into a possessory interest; that is simply not the case. The Court will not revisit its prior rulings on any other points, nor will it review the Alaska Superior Court's Order pertaining to the subject facilities. The Court's determination on the nature and scope of Cully's property interest is settled and will not be revisited.

Based on the change of the United States' position, whether spurred by the Court's Summary Judgment Opinion or not, amendment of the Court's prior ruling is necessary. Grounds no longer exist to assert a permanent taking. However, the United States' temporary taking of Cully's reversionary interest interfered with its present rights. As stated in the original Opinion denying Summary Judgment, trial remains necessary to parse out factual issues that remain

---

[6] The Court will amend and reissue its Summary Judgment Opinion to incorporate and further analyze these findings.

necessitating trial. Triable issues are now limited to: (1) actual damages Cully incurred from interference with the use of its reversionary interest; and (2) Cully's quantum meruit claim.

**IT IS SO ORDERED.**



s/    David A. Tapp
DAVID A. TAPP, Judge