**CORRECTED**

# In the United States Court of Federal Claims

No. 19-339C
Filed: April 11, 2023

---

**CULLY CORPORATION,**

               *Plaintiff,*

**v.**

**THE UNITED STATES,**

               *Defendant.*

---

*Samuel J. Fortier*, Fortier & Mikko, P.C., Anchorage, AK, for Plaintiff.

*Joseph A. Pixley* and *Bret R. Vallacher*, Trial Attorneys, *L. Misha Preheim*, Assistant Director, *Patricia M. McCarthy*, Director, and *Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with *Robin M. Richardson*, Senior Environmental Litigation Attorney for AF/JA-Operations and International Law, Environmental Law and Litigation Division, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

The Court has previously cautioned that a party's petition for reconsideration should occur only after "a period of intensive retrospection" which contemplates the merits of the request and "well-established structures governing" reconsideration. *Lodge Constr., Inc. v. United States*, 159 Fed. Cl. 414, 418 (2022) (concerning reconsideration of interlocutory orders pursuant to RCFC 54(b)). This also applies to the context of reconsideration requests pursuant to RCFC 59. Stated plainly: motions to reconsider are seldom appropriate. Such is the case here.

On December 28, 2022, the Court determined that Plaintiff, Cully Corporation ("Cully"), failed to prove compensable damages in this takings case and directed judgment for the United States. *Cully Corp. v. United States*, 163 Fed. Cl. 676, 679–686 (2022); (ECF No. 207 ("Post-Tr. Op.") at 2–11). Cully timely moved for this Court to reconsider that decision, reasserting previous arguments and contending that the Court misconstrued evidence and misapplied case law. (ECF Nos. 209, 210).[1] The Court did not solicit a response from the United States pursuant

---

[1] Cully's supporting brief was filed as a separate document instead of an attachment to its Motion. (*See* Pl.'s Br., ECF No. 210). This is improper form based on RCFC 7(b); there is no provision in the rules allowing for a brief to be filed separately from a motion. The Court nevertheless accepts this filing and all citations to Cully's arguments will be to the separate brief docketed at ECF No. 210.

to RCFC 59(f).[2] After a thorough review of the record, the Court finds no basis to reconsider its previous decision, therefore the Court denies Cully's Motion.

There is little the Court can reiterate regarding the background and facts of this case, thus it defers to previous summarizations and findings of fact. (*See* ECF Nos. 36, 59, 180, 207). It serves only to briefly summarize the Post-Trial Opinion. After finding that Cully possessed a reversionary interest in three buildings located in Point Lay, Alaska, and that those interests were temporarily divested by the United States, the Court conducted a trial specific to damages in Fairbanks, Alaska in the summer of 2022. *See generally Cully Corp. v. United States,* 160 Fed. Cl. 360 (2022). Afterwards, the Court found that Cully failed to establish actual damages compensable by the Fifth Amendment or in *quantum meruit.* (*See generally* Post-Tr. Op.).

The Court considered the atypical nature of the interest at issue—a reversionary interest—and held that traditional compensation methods did not apply. (Post-Tr. Op. at 14). The Court did not articulate a specific calculation in its Post-Trial Opinion because it did not get that far. Cully failed to establish it attempted to enforce its rights under the lease with the North Slope Borough. Instead, Cully provided expert testimony regarding damages predicated on the flawed assumption that Cully had attempted to exercise those rights. (*Id.*). This effectively puts the cart before the horse. Even if Cully produced some relevant evidence regarding an actual effort to enforce its economic rights, the United States' damage expert offered credible testimony that Cully's reversionary interest for the relevant period was of negligible value. (*Id.*). Finally, the Court found that Cully could not recover *quantum meruit* because it did not offer evidence that Cully paid for remediation to the property. (*Id.* at 15–17). Cully's Motion to Reconsider is grounded in RCFC 59 and applies to the entirety of the Court's findings and conclusions.

RCFC 59(e) allows a party to file "[a] motion to alter or amend a judgment . . . no later than [twenty-eight] days after the entry of the judgment." A motion seeking "a substantive change in the judgment"—that is "a revision which disturbs or revises legal rights and obligations that were settled by the previous judgment"—is considered an RCFC 59(e) motion. *Maxus Energy Corp. & Subsidiaries v. United States*, 31 F.3d 1135, 1139 (Fed. Cir. 1994). The Court will grant a motion pursuant to RCFC 59(e) only under extraordinary circumstances, including: "(1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." *IAP Worldwide Servs., Inc. v. United States*, 141 Fed. Cl. 788, 801 (2019) (internal citations omitted); *see also Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1350 (Fed. Cir. 2000) (discussing the correlative Federal Rule of Civil Procedure and applicable standard). Motions to reconsider are therefore limited in nature and should not be used to tender new legal theories, raise arguments that could have been offered or raised before the entry of judgment, or relitigate prior positions. *See United States v. Kegel*, 687 F.2d 214 (8th Cir. 1982). Against this background, the Court weighs Cully's Motion to Reconsider. It fails.

Cully first claims that the Court erred when it "fault[ed] Cully because Cully, according to the Court, did not attempt to enforce the lease." (Pl.'s Br. at 4 (citing Post-Tr. Op. at 14)). In

---

[2] RCFC 59(f) provides in part that "[a] response to any motion under this rule may be filed only at the court's request and within the time specified by the court."

other words, Cully believes that to succeed on the merits of this case, it is irrelevant to establish whether it took efforts to enforce the lease. Based on this position, the Court cannot discern why this issue is *material* for reconsideration. The Court addresses the argument, nonetheless. Cully argues that there are two factual errors in this finding. (*Id.* at 5).

First, Cully believes that the Court erred when it found that Cully did not attempt to enforce the lease until after ouster. (*Id.* (citing Post-Tr. Op. at 14); *Id.* at 6–7). Yet, the proof was unambiguous, and Cully did not—and does not now—cite controverting testimony. Cully did not: attempt to "evict" the North Slope Borough (the tenant of the buildings); litigate the validity of the transfer documents in a court with proper jurisdiction to obtain a declaratory judgment allowing enforcement of lease provisions; "negotiate" with the North Slope Borough until after ouster; or insure the buildings until approximately one year after the United States' ouster letter. (*See* Post-Tr. Op. at 8). Moreover, Cully did not list these buildings or its interest in them on its relevant financial reports, strongly intimating that either it did not believe it owned the buildings or that the value of the buildings was so trivial that it could be omitted from its balance sheet. (Tr. Blue 437:21–24).

Second, Cully believes that the Court's conclusion that Ms. Awalin, the current president of Cully, was oblivious to the lease and the language therein is "blatantly unsupported by the record." (Pl.'s Br. at 5 (citing Post-Tr. Op. at 7)). This is false. As the Court cites in its Post-Trial Decision, counsel for Cully elicited this fact during the questioning of Ms. Awalin:

> Plaintiff's Counsel: My question to you is whether or not before you received this letter [of April 2013] you were aware that there was a [twenty-five]-year lease that covered your buildings that had not been amended.
>
> Ms. Awalin: Correct.
>
> Plaintiff's Counsel: Were you aware of that?
>
> Ms. Awalin: Of the lease? ***Not until later***.

(Tr. Awalin 64:15–21) (emphasis added).[3] Accordingly, Cully's assertion is contrary to the testimony and therefore unsupported by the record. Had Cully wanted to rehabilitate Ms. Awalin, it could have done so. It did not.

Cully also argues that the Court failed to consider actions taken in 2012 that Cully believes demonstrate an assertion of ownership of the buildings. (Pl.'s Br. at 5). Not so. These actions were not, as Cully now claims, an attempt to "resolve the lease." (*Id.*). Testimony established instead what is best described as token efforts to re-lease the buildings and limit trespassers. (*See* Awalin Tr. 55:20-24 ("We started creating 'do not trespass' signs and put our phone number on -- on -- we made some magnets since these are steel buildings, to inform

---

[3] The Trial Transcript consists of 836 pages and is separated into four volumes located at ECF Nos. 193 (pp. 1–230), 195 (pp. 231–427), 197 (pp. 428–679), and 199 (pp. 680–836). The Court cites the Transcript using the name of the testifying witness, then the consecutive pagination and line numbers, (Tr. NAME, __: __ – __).

people if they would like to lease our facilities, that they -- they can contact us."); Awalin Tr. 58:10-15 ("[I]n 2011[,] . . . I went up to Point Lay to inspect the buildings and found that they were being utilized by the North Slope Borough. And so I pursued to that they needed to have a lease with Cully and that they were in trespass.")). The Court is, again, unpersuaded to reconsider on these grounds. As the trier-of-fact, the Court determined that Ms. Awalin's testimony was unconvincing regarding the resolution of the lease.

Next, Cully *again* asks this Court to effectively find that Cully should have had possessory rights to the three buildings at issue and determine that the lease was transferred to Cully as lessor. (Pl.'s Br. at 12–14). The Court has iterated *ad nauseam* that it lacks jurisdiction to issue such a finding. The Court of Federal Claims has limited jurisdiction and is not a panacea for every grievance Cully may have. The determination that Cully possessed a reversionary interest was litigated and determined at summary judgment, after the Court held that it was bound by the findings of the Alaska Superior Court's decision in *Cully Corp. v. AECOM*. *Cully Corp.*, 160 Fed. Cl. at 373–74. Reconsideration of that decision, at this stage, is inappropriate. Cully did not pursue an interlocutory appeal, and any request for the Court to revisit those findings now—post-trial, post-judgment—would be improper and untimely. RCFC 54(b) (decisions that adjudicate fewer than all claims may only be revised before the entry of a final judgment); (*see also* Post-Tr. Op. at 13 ("By moving for reconsideration [of summary judgment] under the guise of post-trial briefing, the United States has . . . disadvantaged [Plaintiff] by rehashing issues previously decided and thus unavailable at trial.")).

Cully also asserts that the Court incorrectly analyzed the value of the buildings. Cully cites the Court's recognition that the usual measure of damages for the temporary taking was fair rental value. (Pl.'s Br. at 5 (citing ECF No. 149 at 6 (a usual measure of damage is "fair rental value" (internal citations omitted)); Pl's Br. at 12–13). But Cully conveniently ignores that the Court never arrived at a damages calculation. In doing so, Cully omits the Court's subsequent sentence in its Post-Trial Decision which states that, when considering a reversionary interest, the method laid out in *Kimball Laundry Co. v. United States,* 338 U.S., at 1, 7, is *inapplicable*. (Post-Tr. Op. at 14). The Court has echoed this finding—first in its Summary Judgment Opinion and again in the Post-Trial Decision. Further, the Federal Circuit has held that traditional compensation methods are not exclusive; for example, there may be appropriate alternative valuation methods for the taking of an easement. *See Vaizburd v. United States*, 384 F.3d 1278, 1285–87 (Fed. Cir. 2004). Therefore, even if Cully provided affirmative evidence of actual damages, which it did not, Cully's assertion that this method was not followed mischaracterizes the Court's finding.

In its Post-Trial Opinion, the Court was never in a position to establish the correct calculation for Cully's reversionary interest because Cully did not establish the value of that interest. Thus, there was no reason to calculate damages, and the Court could not have ignored the applicable state law as Cully claims. (*See* Pl.'s Br. at 12). Although Cully's basis for the Motion to Reconsider is that the Court failed to follow the controlling law, it does so by arguing that its theory of the case is sufficient to contradict the Court's conclusion. The fallacy in this argument is that it begs the question of whether Cully's interest carried value; the Court found that, after reviewing the evidence, Cully failed to provide supporting documentation that would allow the Court to find in its favor. Cully's claims of error merely articulate a disagreement with the Court's conclusions; this itself is not a sufficient reason to reconsider judgment. This

determination should not come as a surprise when the Court already denied the United States'
motion to reconsider on similar, insufficient grounds. (Post-Tr. Op. at 11–13 (addressing United
States' motion to reconsider)). At any rate, Cully's disagreement is not an "extraordinary
circumstance" necessary for the Court's reconsideration. *IAP Worldwide Servs.,* 141 Fed. Cl. at
801.

As to the *quantum meruit* claim, Ms. Awalin testified that evidence of remediation costs
existed "in [her] office in Anchorage," (Tr. Awalin, 54:22–25), but such evidence was never
produced. This failure was a severe deficiency in Cully's trial proof. Cully argues that the Court
overlooked its proof of damages when it held that no documentation of the cost of remediation to
Cully was proffered at trial. (Pl.'s Mot. at 5 (citing "ECF 16"); *Id.* at 18–21 (citing PX09)).[4]
Cully's smoking gun: an e-mail estimate of how much that work *would have* cost.

**Elsie M. Hendryx**

From: Fenton, Tim [Tim_Fenton@skw.asrc.com]
Sent: Monday, August 22, 2005 9:51 AM
To: Elsie M. Hendryx
Cc: Powell, John
Subject: RE: Contaminated Soils

It is and the costs are representative of that. Originally we told you the the costs for removing 30 yards of materials would run around an estimated $20,000. We are estimating that the cost for removing the 104 yards will run to $45,000 with labor and third party costs included.
If you are able to get funds from the Airforce to cover the extra costs, we need to make sure that by getting those funds, that we do not change our worker's status from Point Lay Constructors Employees doing a job for Cully Corporation at $20 an hour. To workers that can now claim Davis Bacon Wages. That would double the labor rate from a fully burdened rate of $30 per hour to $60 per hour.
Tim

-----Original Message-----
From: Elsie M. Hendryx [mailto:elsie.cully@acsalaska.net]
Sent: Monday, August 22, 2005 8:34 AM
To: Fenton, Tim
Subject: RE: Contaminated Soils

*Well 102 yards is a far cry from 30 yards ............ and what is the labor cost for this?.............*

Elsie M.Hendryx
President/CEO
Cully Corporation
(907) 569-2705
Fax: (907) 569-2715

-----Original Message-----
From: Fenton, Tim [mailto:Tim_Fenton@skw.asrc.com]
Sent: Friday, August 19, 2005 3:22 PM
To: Elsie M. Hendryx
Cc: Powell, John
Subject: Contaminated Soils

This morning the Airforce let us know that we had another 18 yards to move and the work would be complete. At the end of the day yesterday we had removed 84 yards. Our guys will remove 8 yards by the end of the day. Looks like we will be done with the work by Tuesday August 23rd. We will have bagged 102 yards by the time we are done.
Tim

---

[4] "ECF 16" references a Scheduling Order from 2019. Assuming that this reference is a
scrivener's error and intended to read "Exhibit 16," that document was not entered into evidence.

(PX9). A receipt it is not. *See, e.g.*, *Receive*, *Webster's New Int'l Dictionary of the English Language*, 2076 (2d ed. 1958) (defining "receive" as "[t]o take, as something that is offered, given, committed, sent, paid or the like; to accept, as to receive payment," including "[t]o come into possession of, get acquire, or the like, from any source outside of oneself"); *Receipt, Black's Law Dictionary*, 1501 (3d ed. 1944) (defining "receipt" as "[t]he written acknowledgment of the receipt of money or a thing of value," including an "act or transaction of accepting or taking anything delivered"). Cully's emailed "estimate," the word used in the document itself, does not establish any sum spent for remediation or a monetary transaction. "Determining the weight and credibility of the evidence" is within the Court's province. *Inwood Lab., Inc. v. Ives lab., Inc.*, 456 U.S. 844, 856 (1982). Contrary to Cully's mischaracterization, this email did not constitute affirmative, much less credible, evidence of remediation damages. Cully's assertions that the Court ignored evidence of damages does not occasion reconsideration in this circumstance.

Finally, Cully asserts that the Court ignored that Mr. Longtin[5] and Col. Skaja[6] had implied authority to contract thereby forming an implied-in-fact contract. (Pl.'s Br. at 23). Cully explicitly states: "the circumstances and the acts of the parties demonstrate the existence of contract implied in fact to not demolish the buildings but to give possession of them to Cully upon Cully's successful remediation of the garage[.]" (*Id.*) A government representative's authority is "generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989) (quoting J. Cibinic & R. Nash, *Formation of Government Contracts* 43 (1982)). "The word integral has been interpreted to mean 'essential' or 'necessary to form a whole.'" *Roy v. United States*, 38 Fed. Cl. 184, 189 (1997) (quoting *Cruz-Pagan v. United States*, 35 Fed. Cl. 59, 61 (1996)), *appeal dismissed*, 124 F.3d 224 (Fed. Cir. July 10, 1997) (unpublished table opinion). "[Contracting] [a]uthority is integral 'when the government employee could not perform his or her assigned tasks without such authority.'" *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1402 (Fed. Cir. 2016) (quoting *Flexfab, LLC v. United States*, 62 Fed. Cl. 139, 148 (2004), *aff'd*, 424 F.3d 1254 (Fed. Cir. 2005)). Even if Cully could prove it incurred damages, it did not show that the ability to contract was integral to Mr. Longtin or Col. Skaja's positions.

Such a distinction is negligible because Cully also failed to show a "meeting of the minds" necessary to meet the elements of an implied-in-fact contract. *See La Van v. United States*, 382 F.3d 1340, 1346 (Fed. Cir. 2004) ("[A]n implied-in-fact contract is founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."). For instance, on June 30, 2005, Mr. Longtin e-mailed Cully's president at the time, Elsie Hendryx, and stated, in relevant part, "any work done under the Garage is being done

---

[5] David Longtin was a GS-11/12 civilian Air Force employee and served as remedial project manager for the LRRS cleanup from 2003 to 2006. (Tr. Longtin, 134:14–19; Tr. Longtin, 160:3–12, 16–18).

[6] Air Force Colonel Joseph Skaja, Jr. served as the Commander of the 611th Air Support Group in Alaska from 2005 to 2007, with responsibility for the closed Point Lay LRRS. (Tr. Skaja, 182:19–21; Tr. Skaja 183:1–20).

6

at Cully's own risk. In other words, we can't promise you the building as a result of the work you do. However, if no work is done, we CAN promise you the building will be demolished." (PX6 (emphasis in original)). Likewise, Colonel Skaja's understanding was that if Cully undertook the remediation, Cully would receive possession of the three buildings, but he did not personally negotiate with any representative of Cully regarding this arrangement. (*See* Tr. Skaja 189:19–25; Tr. Skaja 190:1–2; Tr. Skaja 196:23–25; Tr. Skaja 197:2–14). Taken together, this testimony demonstrates a lack of agreement between Cully and the United States.

In sum, Cully articulates no intervening change in the controlling law, newly discovered evidence, need to correct clear factual or legal error, or need to prevent manifest injustice. *See IAP Worldwide Servs.*, 141 Fed. Cl. at 801. In the Court's view, Cully merely relitigates its prior positions, an impermissible use of RCFC 59. *Audio Evolution Diagnostics, Inc. v. United States*, 162 Fed. Cl. 73, 77 (2022) (citing *Froudi v. United States*, 22 Cl. Ct. 290, 300 (1991) ("[A] motion for reconsideration is not a vehicle for giving an unhappy litigant an additional chance to sway the judge, nor is it intended to allow a party to make arguments already presented to, and rejected by, the court.")).

Given the limited nature of a motion to reconsider, the Court finds no basis to grant Cully's Motion. Cully's Motion is **DENIED**. (ECF No. 209). The Court's Post-Trial Decision stands and is final.

**IT IS SO ORDERED.**



s/    David A. Tapp
DAVID A. TAPP, Judge